FILED LODGED RECEIVED MAILED
FILED ____ ENTERED
____ LODGED ____ RECEIVED

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON AUG 05 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ____ DEPUTY

| | | |
|---|---|---|
| Roland J. Daza-Cortez, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. Criminal   2:15-cr-269-RAJ |
| | ) |            Civil   2:18-cv-1608-RAJ |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent, | ) | |

PETITIONER'S RESPONSE TO GOVERNMENT'S RESPONSE

TO §2255 MOTION UNDER 28 U.S.C. §2255

COMES NOW, Roland Daza-Cortez, the Movant, pro se, and respectfully files this memorandum brief in support of his Motion to Vacate, Set Aside, or Correct sentence, pursuant to Federal Rules governing §2255 proceedings. Petitioner prays that this Honorable Court construe his pleading in the nature of Haines v Kerner, 404 U.S. 519, 521 (1972), as he is not a lawyer, trained in law, or versed in law.

Movant was granted a stay of the proceedings by this court until August 1, 2019, due to his being transferred to another institution. Therefore, his response is to be considered timely filed. see also Tatum v. Christensen, 786 F. 2d 959, 963 n. 4 (9th Cir. 1985).

JURISDICTION

This Honorable has maintained original jurisdiction of the above criminal and civil cases.

BRIEF HISTORY

Petitioner, along with two others, were charged and indicted on August 6, 2015 with Conspiracy to Distribute Controlled Substances. (CR Dkt #1). After being arrested and arraigned on August 12, 2015, the Grand Jury returned a Superceding Indictment adding eight (8) additional counts and forfeiture allegations on January 7, 2016. These included felony counts of possession with Intent to Distribute Methamphedamine and Heroin (Count 2), Possession of a Firearm in furtherance of a Drug Trafficking Crime (Counts 3 & 4), Possession of Stolen Firearms (Count 5), and

3 Counts of Money Laundering (Counts 6-9).see (CR Dokt. 47). The arraignment for these new counts January 21, 2016. Petitioner's minimum sentence exposure was now a minimum of 180 months in Federal Prison. see Title 18 U.S.C. §924(c) and Title 21 U.S.C. §841 (b)(1)(A).

On August 12, 2015, at his initial appearance, Petitioner (then defendant) was appionted Robert Goldsmith, who was soon replaced by retained counsel Peter Mazzone August 25, 2015. Trial was rescheduled from October to April of 2017. After issues with counsel, he was substituted with Bryan Harshman until Emily Gause was retained. Mrs. Gause continuances August 2016, then December 2016, January 2017, and March 20, 2017. In February 2017 several pre-trial motions were filed by Petitioner's counsel, all of which were dismissed. See CR. Dkt.(105-114 and 166-168). On March 13, 2017 Petitioner entered into a guilty Plea, based on the advice of counsel, before U.S. Magistrate Judge Mary A. Thiler. (CR. Dkt. 117).

On October 29, 2018 Petitioner filed his Motion to Vacate, Set aside, or Correct a Sentence under 28 U.S.C. §2255, which was docketed November 2, 2018. The Government filed their response in opposition December 28, 2018. (CV. Dkt. 5). Petitioner's reply was filed January 14, 2019. After being notified of being transferred to another institution, Petitioner requested a Stay of the proceedings until, which the court granted until August 1, 2019 and the Government agreed. Petitioner also notified the court that the filed Petition was intended to be a "place holder" for subsequent filings.

## INEFFECTIVE ASSISTANCE OF COUNSEL

A. Standard

The Sixth Amendment to the Constitution guarantees the effective assistance of counsel. To establish ineffective assistance of counsel, a Petitioner must demonstrate both that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L. Ed 2d 674 (1984); See also Knowles v. Mirzayance, 556 U.S. 111, 124, 129

S.Ct. 1, 157  L. Ed 2d 1 2003).

1. The first prong of the Strickland test, deficient performance, requires the showing that counsel's performance, in light of all the circumstances, was "outside the wide range of professionally competent assistance.". Strickland, 466 U.S. at 690. Outside of the distorting effects of hind sight and evaluating counsel's conduct at that time, judicial scrutiny of counsel's performance must be highly differential. Though there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.".  Strickland, 466 U.S. at 689. A habeas petitioner bears the burden to show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. See Richter, 131 S.Ct. at 787 (citation and internal quotations omitted).

2. The second prong, prejudice, requires that Petitioner shows a reasonable probability that, but for counsel's unprofessional errors, the result of the proceed-ings would have been different. Strickland, 466 U.S. at 694. Said reasonable probabi-lity is probability "sufficient to undermine the confidence in the outcome." Id.,; See also Woodford v. Visciotti, 537 U.S. 19, 22, 123 S. Ct. 357, 154 L. Ed 2d 279 (2002).

Although a court may conclude that a single error rendered counsel's performance ineffective, it must consider the totality of the circumstances in making it's determination. Murray v. Carrier, 477 U.S. 479 (1986); Strickland v. Washington, supra, at page 690. A court that finds that a defendant has failed to satisfy one prong of the Strickland test, need not consider the other. Below, Petitioner intends to show that his counsel was ineffective and that ineffectiveness did prejudice his case by rendering his plea involuntary, unknowingly and unwillingly entered, thereby rendering the plea null and void. This circuit's general rule is that ineffectiveness of counsel claims "usually ...  cannot be advanced without the development of facts outside the original record.". United States v. Birgos, 723 F. 2d 666, 670 (9th Cir.

1984). Clearly, a challenge to ineffectiveness is by way of habeas corpus proceedings to provide the defendant a way to develop a record of what counsel did, why, and if prejudice resulted.

B. FAILURE TO INVESTIGATE

A defense counsel has a "duty to make reasonable investigations or to make a reasonable decisions that makes particular investigations unnecessary.". Strickland, 466 U.S. at 691; Wiggins v. Smith, 539 U.S. at 521. This includes a duty to investigate the Prosecution's case and to follow up on any exculpatory evidence. Kimmelman v. Morrison, 477 U.S at 384-85; See also Bragg v. Galaza, 242 F. 3d 1082, 1088-89 (9th Cir.)(defense counsel's duties include "a duty to investigate the defendant's 'most important defense', and a duty adequately to investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict." (citations omitted) as amended, 253 F. 3d 1150 (2001).

The performance of counsel is deficient if conditions exists that might show a defendant's innocence or raise sufficient doubt to undermine confidence in a guilty verdict, and counsel did not investigate the evidence. Riley v. Payne, 352 F. 3d 1313, 1318 (9th Cir. 2003). To show prejudice the Petitioner must demonstrate that further investigation would have revealed favorable evidence. Ceja v. Stewart, 97 F. 3d 1246, 1255 (9th Cir. 1996)(full citation omitted). Moreover, "ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case", Bragg v. Galaza, 242 F. 3d at 1088 (citation omitted).

This court has held that "The failure to investigate is especially egregious when a defense attorney fails to consider potentially exculpatory evidence". Rios v. Rocha, 299 F. 3d 796, 805 (9th Cir. 2002). Failure to present this evidence at trial, (or in the instant case prior to plea) also falls below the applicable standard of reasonable conduct. See Duncan, 528 F. 3d at 1234; see also Lord v. Wood, 184 F. 3d

4.

1083, 1095-96 (9th Cir. 1999).

1. According to the Attorney-Client Work product done by Mr. Greg Walsh (**Ex 1**) and the record (Doc. #125, Governments Response to Defendant's Motion to dismiss), the main vehicle in question, a 2007 Toyota Scion, was registered to Christe Ann Schamp from 8-30-14 to and during the alleged criminal conduct. Prior to her it belonged to the CI. The Scion was not "sold" to defendant until 10-19-2015, after his arrest and the finding of drugs and guns within. In order to prove constructive possession of property, the government must demonstrate that the defendant both knows of the presence of the contraband and has power to exercise dominion and control over it. Williams v. United States. 418 F. 2d 159, 162 (9th Cir. 1969). A more diffi-cult situation for the government is when the primises are shared by more than one person. Mere proximity to contraband, presence on property where it is found, and association with a person or persons having control over it are all insufficient to establish constructive possession. United States v. Valenzuela, 596 F. 2d 824, 830-31 (9th Cir. 1979). In united States v. Soto, 779 F. 2d 558 (9th Cir. 1986), the court held that "mere proximity of a weapon to a passenger in a car goes only to it's accessibility, not to the dominion or control which must be proven to establish possession". Id. at 560. Therefore the Government cannot prove that Petitioner was in possession of any of the guns or drugs in this case. The defendant was not owner, driver or otherwise in possession/ constructive possession at any time during this investigation. It is fact that counsel failed to demonstrate this so that it would be part of the record to show factual innocence.

2. Counsel also failed to investigate the tax records , expense accounts, the inventories, purchace, sale, deposit slips, transfers of funds, etc., of Avacados Resturant. In doing so, counsel would have documentation of the legitemacy of the business and it's legal transactions. The forfeiture would not have been able to proceed.

3. The Government also stated that there was a finger print on the bags of

drugs. Yet counsel failed to investigate further to introduce evidence, which would have shown that the defendant's prints were not present and therefore the drugs could not be attributed to him. (**Ex. 2**). In Doc. #108-4, pg 11, Ln. 26-28 (Affidavit of Cory Williams), it is noted that the CS "was not paid by Daza-Cortez for any of the six controlled drug transactions.". If there is no money, there is no transaction and therefore no crime.

4. Counsel also failed to provide defendant, her client, with discovery as she was still in the process of receiving it. In contacts, via email, counsel made consistant requests for discovery, (**Ex. 3**), from the United States District Attorney's Office. In open counsel also requested more time, which the court denied (see Evidentiary Hearing, held March 10, 2017- pg. 326, Ln. 23 to pg. 327, Ln. 20). There counsel pleaded with the court for a continuance, stating she was "not ready". Counsel filed motions, but the deadline for filing was February 6, 2017. Counsel's Motion for Admissibility of Rule 404 Evidence was not filed until February 7, 2015.

5. Counsel also failed to raise the claim of speedy trial rights violation by previous counsel when requested by client. The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial.". Such a right is fundamental and exists not just to ensure "that all accused persons be treated according to decent and fair procedures", Barker v. Wingo, 407 U.S. 514, 519, 33 L. Ed 2d 101, 92 S. Ct. 2182 (1972), but also because "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interest of the accused.". Id. at 519. See also 18 U.S.C. § 3173.

Article III of the Interstate Agreement on Detainers Act (IAD) incorporates within, several prerequisites of the speedy trial provisions that must be met by a prisoner to invoke these provisions. In short, a prisoner must be brought to trial within 180 days or a request for final disposition may be made of the indictment, information or complaint. See 18 U.S.C. App. III, Art. III(a). For former counsel to waive such a right without conferring with the defendant, and counsel at plea to

fail to investigate it, deprives that defendant of a timely trial right.

In sum, these lapses constitute a clear violation of counsel's "duty to 'conduct a thorough investigation of the defendant's background' in order to discover all relevant mitigating evidence.". Robinson v. Schriro, 595 F. 3d 1086, 1108 (9th Cir. 2000)(quoting Correll, supra, 539 F. 3d at 942 and Williams, supra 529 U.S. at 396). See also Wiggins, 539 U.S. at 524-25 (Its prema facie ineffective assistance for counsel to "abandon their investigation of [the] Petitioner's background after having acquired only a rudimentary knowledge of his history from a narrow set of sources.". In the instant case this source is the prosecution and not the hired investigator.

In assessing prejudice, the court must "compare the evidence that actually was presented to the jury with evidence that might have been presented had counsel acted differently," . Bonin v. Calderon, 59 F. 3d 815, 834 (9th Cir. 1995). In short, is evidence not presented sufficient to "undermine confidence in the outcome of the proceedings,". Lambright v. Schiriro, 490 F. 3d 1103, 1121 (9th Cir. 2007) (quoting Strickland, 466 U.S. at 694). Had counsel uncovered and presented the extensive evidence of Petitioner's legal businesses, the difference in the vehicles finger print evidence (or lack thereof), the illegal search of the wrong property, no waiver of speedy trial, etc., there is a reasonable probability, a probability sufficient to undermine the comfidence in the plea, verdict, and sentence that at least one juror would have opted for a not guilty verdict had defendant went to trial.

"A defense lawyer must make reasonable investigations in the course of representation ... counsel's investigation must, at a minimum, permit informed decisions about how best to represent the client.". Cox v. Ayers, 588 F. 3d 1038, 1045-46 (9th Cir. 2009)(citing Sanders v. Ratelle, 21 F. 3d 1446, 1457 (9th Cir. 1994)). Within, the court cited two duties that must be distinguished between. They were the duty of counsel to investigate relevent defenses and to reasonably select and present a defense. Therefore, it is incumbent upon this court to consider the

reasonableness of counsel's investigation. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the the circumstances, applying a heavy measure of difference to counsel's judgments.". Strickland, 466 U.S. at 691. The court should "evaluate whether the difference between what was presented and what could have been presented is significant to 'undermine confidence in the outcome' of the proceedings". Lambright v. Schririo, 490 F. 2d 1109, 1121 (9th Cir. 2007). To do so the court is required to "evaluate the totality of the available mitigating evidence, both that adduced at trial, and the evidence adduced in the habeas proceeding" and " reweigh [] it against the evidence in aggrivation.". Williams v. Taylor, 529 U.S. 362, 397-98, 120 S. Ct  1495, 146 L. Ed 2d 389 (2000). This court has also held that "prejudice is established if 'there is a reasonable probability that at least one juror would have struck a different balance' between life and death" Belmontes v. Ayers, 529 F. 3d 834, 863 (9th Cir. 2008).

C. PLEA BASED ON ERRONEOUS ADVICE OF COUNSEL

Under Federal law, to be valid, a guilty plea must be knowingly, voluntary, and intelligent. United stated v. Brady, 397 U.S 742, 748, 90 S. Ct. 1463  25 L. Ed 2d 746 (1970). Also, guilty pleas must represent a voluntary and intelligent choice among alternative courses of action open to a defendant. Hill v. Lockhart, 474 U.S. 52, 56, 106 S. Ct. 366, 88 L. Ed 2d 203 (1985). Therefore, as here, a defendant has more than one option and erroneous advice taints that free choice. A previous plea offer for less time was not presented by counsel. The plea deal, contract, must be nullified, the plea withdrawn, and he be placed back in his prior position.

A defendant who pleads guilty in reliance on his or her attorney's "gross mischaracterization of the likely outcome" of his or her case may be entitled to withdraw the plea on ineffective assistance of counsel. Iaea v. Sunn, 800 F. 2d 864, 865 (9th Cir. 1994). Also a guilty plea cannot be "induced by ...

8.

misrepresentation". <u>United States v. Signori</u>, 844 F. 2d 635, 638 (9th Cir. 1988)
(quoting <u>Brady v. United States</u>, 397 U.S. 742).

The guarantee of the Sixth Amendment applies when defendant facing charges is
offered a plea. See <u>Padilla v. Kentucky</u>, 559 U.S. 356, 364, 130 S. Ct. 1473, 176
L. Ed 2d 284 (2010). The effective assistance of counsel, prior to deciding whether
or not to plead guilty is the right of a defendant.

1. Counsel was presented with an offer of 5 year minimum sentence, (**Ex. 3**) via
email dated  1-25-17 from U.S. Attorney Sarah Vgel. The defendant was not informed
of such offer as opposed to the instant plea received, (**Doc. 171**), where the sentence
was a much longer sentence with additional charges.

2. Defendant was not properly informed that he would be waiving all rights to
appeal,  other than ineffective assistance, until he signed it. He felt bullied into
signing under duress as the Government threatened to keep the resturant and request
more time in prison for each day the plea was not accepted.

This court has held on several occasions that when a prisoner's allegations
of a coersed plea are based on alleged occurrences outside the record, an evidentiary
hearing is required. <u>Mayes v. Pickett</u>, 537 F. 2d 1080, 1083 (9th Cir. 1976) cert.
denied, 431 U.S. 924, 53 L. Ed 2d 238, 97 S. Ct. 2198 (1977). There the court held
that even an exemplary Rule 11 record was inadequate to determine the appellant's
claims of involuntariness where he asserted that his attorney made promises regarding
his sentence. <u>Mayes</u>, 537 F. 2d at 1084.

This court has also held that a right to effective assistance of counsel
applies to all "critical stages of the criminal preceedings.". <u>Montejo v. Lousiana</u>,
556 U.S 778. 786, 129 S. C.t 2079, 173  L. Ed 23 955 (2009)( internal quotation
marks omitted). That is not only "the entry of a guilty plea," but also "arraignments,
postindictment interrogatories, [137 S. Ct. 1972] [and] postindictment lineups.".
<u>Frey</u>, supra,  at 140, 132 S. Ct. 1399 182 L. Ed 2d 379 (citing cases). In <u>Missouri v.</u>
<u>Frye</u>, 566 U.S. 134, 132 S. Ct. 1399, 183  L. Ed 2d 379 (2012), the court extended

Hill to hold that counsel could be constitutionally ineffective for failing to communicate a plea deal to a defendant. That defendant would have accepted the earlier plea offer, along with a "reasonable probability that the end result of the process would have been more favorable by reason of a plea to a lesser charge or a sentence of less time.". Id. at 147. The court stated that "defense counsel has the duty to communicate formal plea offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." The Ninth Circuit has also held that a defendant is also "entitled to the effective assistance of counsel in his decision whether and when to plead guilty." United States v. Leonti 326 F. 3d 1111, 1117 (9th Cir. 2003).

The erroneous and faulty legal advice rendered the guilty plea and the waiver of the right to appeal and collateral attack the conviction or sentence pursuant to 28 U.S.C. §2255 motion, not voluntary or intelligently entered. See Tollet v. Henderson, 411 U.S. 258, 93 S Ct. 1602, 36 L. Ed 2d 235 (1973)(A criminal defendant can only attack the voluntary and intelligent character of guilty plea based on the advice of counsel); United States v. Rumery, 698 F. 2d 764, 766 (5th Cir. 1983) (counsel induced defendant's guilty plea based on the erroneous advice which renders the guilty plea involuntary and unintelligently entered and constitutes ineffective assistance of counsel). The instant plea must not be allowed to stand as it was based on the ill advice of his counsel. Therefore it is involuntarily entered and should b withdrawn.

D. ABANDONMENT OF COUNSEL AT CRITICAL STAGES

Petitioner acquired the assistance of Emily Gause, via contract, located at 1001 Fourth Avenue, Suite 4400, in Seattle, Washington 98154. (**Ex. 4**) The portion listed as Sec. 1 (Scope of Representation) the services include: "all investigation up to trial including representation at pretrial hearings and if necessary, sentenc ing". On page 2, Sec. 2 (Legal Fees) it is lists "upon signing this agreement client agrees to pay a flat fee in the amount of fifteen thousand dollars ($15,000),

Therefore, Emily Gause was the counsel of record and was to attend all critical stages of proceedings in order to function as counsel guaranteed by the Sixth Amendment of the Constitution.

The Ninth Circuit uses a three-factor test for determining whether a preceding is a critical stage: (1) whether the failure to pursue strategies or remedies result in a loss of significant rights, (2) whether counsel would be useful in helping the defendant understanding the legal issues, and (3) whether the preceding tests the merits of the defendant's case. Hovey v. Ayers, 458 F. 3d 892, 901 (9th Cir. 2006); See also United States v. Benford, 574 F. 3d 1228, 1232 (9th Cir. 2009). The court stated that any one of these factors may be suffecient to make a preceding a critical stage. Hovey, 458 F. 3d at 901-02. The Sixth Amendment requires that a defendant be provided counsel at every stage of a criminal preceding where substantial rights of a criminal accused may be affected. In United States v. Cronic, 466 U.S. at 659, the court held that prejudice must be presumed if counsel is absent from a "critical stage" in the proceedings, though Strickland ordinarely requires proof of prejudice by counsel's absence.

1. Once the PSR was completed by the Probation Office, instead of counsel going over it with defendant, she simply gave it to him stating if he had any objections to file them in the next ten days. Petitioner, then defendant was unable to as he is not a lawyer.

2. Failure of counsel to file a notice of appeal or an appeal where there is clear instruction by defendant to file establishes deficient performance and prejudice even if there is a valid appeal waiver. United States v. Sandoval-Lopez, 409 F. 3d 1193, 1197 (9th Cir. 2005). "A lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.". Roe v. Flores-Ortega, 528 U.S. 470, 477 120 S. Ct. 1029, 145 L. Ed 2d 985 (2000).

3. Counsel also failed to file an .Anders brief prior to abandoning him after

11.

the plea was signed. The defendant was not able to discus further action, the plea, or any other avenues with counsel. In Anders. v California, 386 U.S. 738, 87 S.Ct. 1396, 18 L. Ed 2d 493 (1967) it is required for counsel to: (1) advise the court that there are no nonfrivolous issues on appeal; (2) file a motion requesting permission to withdraw as counsel of record; and (3) file an opening brief "refering to anything in the record that might arguably support the appeal.". Id at 744. This counsel did not comply with either of the three requirements of Anders, as it is there to provide appellate courts a basis to find if counsel fully performed their duty to their client to the best of their ability. See McCoy v. Coirt of Appeals, 486 U.S. 429, 439 108 S.Ct. 1895, 100 L. Ed 2d 440 (1988); see also 9th Cir. Rule 4-1(c)(6).

4. Counsel also failed to contest forfeiture proceedings as they were done in an illegal fashion. To establish a violation of 18 U.S.C. §1956 (a)(1)(B)(ii) the government must prove that the defendant: (1) conducts or attempts to conduct a financial transaction which involves proceeds of specified unlawful activity, (2) knowing that the transaction is designed in whole or in part to avoid a transaction reporting under state or federal law; and under Sec. (2), must be from a place in the United States to and through a place outside the United States or to a place in the United States from or through a place outside the United States. This would require a showing of funds transfers being illegal or unaccounted for. No such documentation existed prior to the forfeiture proceedings. Counsel never made any objections or requested a stay of the proceedings to investigate the financial dealings of the businesses. Unless the defendant knew the transaction to be or had been illegal in "criminal activity", a defendant cannot be convicted. The investigation and collection of Tax documentation by counsel would have shown the legality of the businesses and it's transactions. this includes the purchase of property, vehicles, homes, etc.,. This Circuit has held that convictions necessitates proof beyond a reasonable doubt. See also United States v. Burgos, 254 F. 3d 8, 14 (1st Cir. 2001)

(stating that in order to convict the defendant of money-laundering "the government had to prove that he had attempted to distribute cocaine to satisfy the specified unlawful activity element of the crime." (internal quotation marks omitted)). See (Doc. # 108-1 to 108-9)

The Toyota Scion, wherein drugs and guns were said to be found, was registered to someone other than the defendant. The Cadillac, placed for forfeiture, was also registered to someone else, Florinda Reyes. (**Ex. 5**). None of the evidence attributed to defendant as illegal belonged to him nor was it in his possession. When criminal forfeiture proceedings are initiated under 18 U.S.C. §982 (2)(1) for violations of §1956, 1957, or 1960, the court "shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.". When counsel failed to challenge the forfeiture and force the Government to prove financial traces to property, he is deprived of such property illegally.

When a voluntary guilty plea is entered into, all non-jurisdictional defects in the proceedings are waived, to include ineffective assistance of counsel, "except as the ineffectiveness is alleged to have rendered the guilty plea involuntary". United States v. Glinsey, 209 F. 2d 386, 392 (5th Cir. 2000). The state bears the burden of persuading the court by at least a preponderance of the evidence that the confession was voluntary. Williams, 727 F. 2d at 1389-90 (full citation omitted). An involuntary plea is unconstitutional under the Fourth Amendment, Sims v. Gregory, 385 U.S. 538, 543-44, 87 S.Ct. 639, 17 L. Ed 2d 593 (1967).

In Mak v. Blodgett, 970 F. 2d 614 (9th Cir. 1992)(full citation omitted), the court held that prejudice resulted from the cumulative errors including counsel's failure to present mitigating evidence at sentencing. Here, the number of errors far exceeds those in Mak. A Petitioner is required to allege specific facts which, if true, "would entitle him to relief". United States v. Rodrigues, 347 F. 3d 818, 824 (9th Cir. 2003). In the instant case, Petitioner has met this requirement.

Therefore, Petitioner moves this Honorable Court to vacate, set aside, or correct his conviction and sentence based on the facts, record, and evidence above and on the record. In the alternative, Petitioner request, at a minimum, an evidentiary hearing for further arguments and fact finding. This being done in the interest of justice. Petitioner prays that after careful review and consideration of the totality of facts, law, rules, and case law this Court will find that after the numerous errors of counsel, that she was not functioning as counsel required by the Sixth Amendment therefore ineffective.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument has been deposited in the Yazoo City Correctional Complex prison internal legal mailing system with first class postage affixed thereto on this _26_ day of _July_, 2019, correctly addressed to the following:

Clerk of Court
Office of Clerk
Western District of Washington at Seattle
700 Stewart Street
STE 2310
Seattle, Washington 98101

Carl A. Colasurdo, AUSA
United States Attorney Office (SEA)
700 Stewart Street
STE 5220
Seattle, Washington 98101-1271

The undersigned hereby executes this certificate under penalty of perjury pursuant to 28 U.S.C. §1746.

Done this _26_ day of _July_, 2019.

Respectfully Submitted,

Roland J. Daza-Cortez
Reg. No. 45237-086
Federal Correctional Complex
P.O. Box 5000
Yazoo City, Mississippi 39194

Pacific Confidential PLLC     Re 16-029, Daza-Cortez     Attorney-client work proc 

A Tale of Two Scions

This first page refers to only ONE of the two cars, with two separate WA DoL records for the same car, which also further refers to Oregon records for the same car. This car was sold initially new and financed by Honda Motor Co., then destroyed and totaled by the insurer, then retitled in Oregon and rebuilt, then retitled in Washington with a different rebuilt title, then sold to, but not registered by, our client, and finally apparently purchased from forfeiture auction by a local dealer. I previously erroneously referred to this car as a Scion XB, a distinctive boxy 4-door family car. It is actually a Scion TC, a sporty coupe. This car is now for sale at Sunnyside Automotive Group, 12715 Aurora Avenue North, for $7995. I have not seen it in person, but one promotional photo shows an area of trim hacked out around the right rear speaker enclosure.

A search by VIN JTKDE177270211943 yields WA license plate records 303JZH and 900WQA.

| | |
|---|---|
| Listed by WA DoL as sold to Roland, but not registered by him or anyone else: | Listed by WA DoL as titled out of state, unable to determine most recent owner information (in WA). This record shows the original owner, and out-of-state title issued 10/26/09, after WA title was voided by OR on 5/09. |
| 2007 Toyota Scion TC<br>VIN JTKDE177270211943<br>Color: Not listed | 2007 Toyota Scion TC<br>VIN JTKDE177270211943 (same car)<br>Color: Blue |
| Last registered owner:<br>Schamp, Chryste Ann<br>16813 41st Drive NE, #B<br>Arlington WA 98223 | Last registered owner:<br>Ehlers, Phillip H. and Sarah G.<br>3912 SW Austin Street<br>Seattle WA 98136 |
| <u>Expired</u> WA plate: 303 ZJH | <u>Inactive</u> WA plate: 900WQA |
| Sale recorded on 10/19/15 to:<br>Roland Jesse Daza-Cortez<br>10822 Evergreen Way<br>Everett WA 98204 | Titled out of state (OR) 10/26/09<br>Insurance destroyed 12/12/08 |
| Last WA DOL transaction: 10/19/15<br>"Report of sale with record flagged" | Last WA DoL transaction: 10/26/09<br>"Titled out of state" |
| Previous transaction: 9/15/14<br>"Verified title update" | Previous transaction: 12/12/08<br>"Insurance destroyed" |
| Title number: 1424203608 | Title number: 0715821209 |
| Branded title history:<br>WA 11/25/08 rebuilt<br>OR  5/7/09 totaled<br>OR 5/7/09 reconstructed | Branded title history:<br>WA 11/25/08 rebuilt |

Scion clarification data                    Greg Walsh                         Page 1 of 2

Pacific Confidential PLLC        Re 16-029, Daza-Cortez      Attorney-client work product

This second page refers to a confusingly similar, but different vehicle, which is associated with four WA DoL license plates and records, of which only one is active.

This vehicle IS a Scion XB, the boxy 4-door family car.

A search by VIN JTKLE50E581016644 yields four WA DoL records and license plates, of which only one is active.

2008 Toyota Scion XB
VIN JTKLE50E581016644
Color: Silver

Current registered owner:
Cortez, Natalie R.
1002 North Meridian                      This address is a UPS Store mail drop. Providing
Suite 100, PMB 287                        an address other than the actual owner's physical
Puyallup WA 98371                         address is a violation, subject to exceptions, below.

Current WA plate: AVS3775

Last WA DoL transaction: 8/4/16
"Manual renewal"

Previous transaction: 9/4/15
"Verified title update"

Title number: 1522941409
Title transferred: 8/17/15

Branded title history:
"WA 8/17/15 not actual"                   This entry correlates to the first registration by
                                          Natalie Cortez. One explanation for this entry,
                                          and a likely one, would be that Natalie alerted WA
                                          DoL to her use of a non-physical address, taking
                                          advantage of RCW 40.24, allowing this practice
                                          when the registered owner is a stalking or domestic
                                          violence victim who might be endangered by
                                          physical address disclosure.

Scion clarification data              Greg Walsh                      Page 2 of 2

**M E M O R A N D U M**                                          *Ex-2*

DATE:          January 21, 2017

TO:            FILE

FROM:          EMG

SUBJECT:       Negotiation Options for Roland Daza-Cortez

<u>**Drug Quantities**</u>

*Relevant Conduct*

**March 19, 2002:**      Traffic stop.  Daza-Cortez driving a car that was stopped in Edmonds – 1,116 grams of cocaine and 709 grams of heroin.  BS 7462-7474.  However, no lab reports.

**March 17, 2009:**      Traffic stop.  Miguel Gonzalez was driving car in West Covina, CA, Daza-Cortez is passenger.  Both arrested.  2 pounds of methamphetamine in a tote bag in the trunk and $48,000 in a hidden compartment.  BS 7461, 8058-79.

**August 26, 2014:**      Traffic stop. Surveillance conducted at 6725 51st Avenue E in Tacoma – a "known stash house for a DTA – "  Observed an Blue Lexus 250 (WA License A0T-2265) registered to Jennifer Daza at the duplex stash house.  Hispanic male, later identified at Roland Daza-Cortez, left carrying package out of house.  Put box in the trunk of the Lexus.  Traffic stop – SW obtained. = package of 9.8 pounds of methamphetamine.  Lab report received on 11/29/2016 which = **3914 grams 100% pure meth.**  BS 1454-64, 1485-96, 8144-8149.  Exhibit 49 is the meth from the 2014 Tacoma bust.  Roland never had the chance to touch the baggies.  The fingerprints belong to Daniel Naranjo-Godinez, who was busted and incarcerated for this incident.

*Controlled buys in this investigation  = 783 grams of meth and 2.35 grams of heroin*

1.  Controlled buy **11/13/14** at 13019 Beverly Park Rd. (Roland/Eribay's Residence)
    Ex 42 = 280.1 g crystal meth  (mailed to lab 5/6/15) → **238 grams**

2.  Controlled buy from Daza-Cortez and Mendoza-Garcia on **12/5/14**:
    Ex. 43 = 271 g crystal meth (mailed to lab on 5/6/15) → **226.79 grams**

3.  Controlled buy from Daza-Cortez on **1/7/15**:
    Ex. 44 = 62.1 g crystal meth (mailed to lab on 5/6/15) →   **32.27 grams**

4.  Controlled buy from Daza-Cortez on **2/13/15**
    Ex. 45 = 36.5 g heroin (mailed to lab on 5/6/15) → **2.35 grams**
    Ex. 46 = 94.5 g crystal meth (mailed to lab on 5/6/15 → **57.04 grams**

    } **89.31 g**

5.  Controlled buy from Daza-Cortez, delivered by Valadez-Vasquez on **2/19/15**:
    Ex. 47 = 216.1 g crystal meth (mailed to lab on 5/6/15) → 173.04 grams

6.  Controlled buy from Daza-Cortez, delivered by Valadez-Vasquez and Mendoza-Garcia on **3/12/15**:
    Ex. 48 = 94.2 g crystal meth (mailed to lab on 5/6/15)  → 56.31 grams

    - NOTE:  There are no authorizations provided for recorded calls on 2/19 or 3/12.

Daza-Cortez Negotiation Memorandum
Page 2

*Seized at execution of the SW on Beverly House on 8/12/15*:

      Ex. 200 = Two live Marijuana Plants
      Ex. 201 = 52.1 g cocaine (in Eribay Nau Daza-Cortez's jeans)
      Ex. 202 = 63.8 g cocaine (near where Daza-Cortez was arrested)
      Ex. 203 = 31.6 g crystal meth (found in a jacket pocket in a bedroom)

*Seized from 2007 Toyota Scion at Sky's Auto on 8/12/15*:

      Ex. 500 = 44 g cocaine - left rear compartment
      Ex. 501 = 574.8 g crystal meth - right rear compartment
      Ex. 502 = 5.3 K meth (plastic container) - left rear compartment
      Ex. 503 = 290.3 g heroin - right rear compartment

      **LAB RESULTS:**
      **501 = 485.6 g actual meth (99% pure)**
      **502 = 4746 g actual meth (99% pure)**
      **503 = 228 g heroin**

DC's prints on Exhibit 501, 2 baggies with 574.8 g meth from the Scion (BS 7405-09)
DC and MG's prints found on Exhibit 502, the 5.3 kg meth from the Scion

Exhibit 500 is the small amount of cocaine in the Scion.

Daza-Cortez Negotiation Memorandum
Page 3

<u>**Gun Evidence**</u>

**Two guns found in the 2007 Toyota Scion on August 12, 2015:**
ATF Exhibit #17 – Smith and Wesson handgun model 39, caliber 9mm, seized from cavity between
exterior body wall and interior wall in the **right rear quarter panel.**
ATF Exhibit #18 – Taurus handgun Model PT 145 Millennium Pro, caliber .45, seized from the
cavity between exterior body wall and interior wall in the **right rear quarter panel.**

- **Note:** the photographs and love letters were also found in the cavity in the **right rear
  quarter panel.**

**Two guns found at 46th Street in Snohomish (Roland & Natalie's house) on August 12, 2015:**
Item 1 – Ruger Handgun seized from the safe located in the first floor closet of the residence
Item 2 – Titan handgun seized from the garage of the residence

- Information about a gun safe at Daza-Cortez's residence 11510 46th Avenue SE.  Searched
  August 28, 2015.  **No safe found or guns found.**

- <u>Natalie has claimed ownership of the guns at the house and the ammo</u>

- <u>**No 924(c) nexus because no drugs found at the house.**</u>

**17 guns (+ 1 airgun) found in the Storage Unit on August 25, 2015:**
Execution of SW on the storage unit located at 2020 Bickford Avenue in Snohomish WA.  Found 17
guns, bullet proof vest, thousands of rounds of ammo, large quantity rifle and handgun magazines.
- 10 guns are <u>stolen</u>.  BS 1089-95; 7661-82; 8108-27.
- **"Management stated that according to their records, storage unit B2-107 was rented
  in December 2014 under the name 'Jacobo ALVEAR,' and that the above code, which is
  used to access the main gate, has not been used since that time." (1169)**
- Roland did have a key and access code in his wallet but no proof that he ever accessed the
  storage unit.
- Because Alvear rented the unit in his own name, made monthly payments, and nobody
  accessed the unit since he first rented it, there was no probable cause to search the storage
  unit connected to Roland.

Daza-Cortez Negotiation Memorandum
Page 4

## Risks at trial:

Likely base offense level of a 38
+ 2 money laundering
+ 2 leadership role
+ 2 gun possession

10 year MM on the drugs + 5 year MM on the 924(c) = **15 year MM**

AUSA estimates 300+ month range if loss at trial

## Current offer:

**Drugs**
>    Base offense level 34 (50+ grams of actual meth)
>    + 2 money laundering
>    + 2 leadership role
>    - 3 acceptance of responsibility
>    = 168-210 months (14-17.5 years)      **5 year MM**

**Gun**
>    924(c)  = 60 months consecutive to the drug counts   **5 year MM**

**Money Laundering**

Forfeit $267,500 in money laundering funds, 2008 Cadillac Escalade, all ownership in Avocados, $60,852.38 in Union Bank 7474, and $4,179.29 in Union Bank 7466.

**Joint agreement to recommend 120 months   (10 years)**

Daza-Cortez Negotiation Memorandum
Page 5

**Possible resolution options:**

783 g of meth in controlled buys  (only 89 grams from the meth actually delivered by Daza-Cortez)

NO pleading to 924(c) guns or drugs in the Scion

NO 924(c) for the guns in the storage unit

NO money laundering

= base offense 30  (50-150 grams actual)   (B)(1)(b) plea – 5 year MM
No money laundering +2
No gun +2
No leadership role
-3 acceptance of responsibility

_____
= offense level 27  (70-87 months)


Argue against "organizer, leader, manager, or supervisor"  (avoids +2 enhancement) **3B1.1**
Labels like "boss" do not control.
**Factors:**  exercise of decision making authority, nature of participation in the commission of the offense, the recruit of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of illegal activity, degree of control and authority exercised over others.  Does not apply to someone who merely suggests committing the offense.


**Try to get the government to cap recommendation at 84 months (7 years)**
**Defense can argue for 60 month MM**

If Roland got 60 months LOW END:
- 18 months credit for time served
- 15% good time credit
- RDAP (?)

_____
  **= 23.7 months left to serve**

If Roland got 84 months HIGH END:
- 18 months credit for time served
- 15% good time credit
- RDAP (?)

_____
  **= 44 months left to serve**

Daza-Cortez Negotiation Memorandum
Page 6

## Arguments for Negotiation

**No Guns**
- No fingerprints or DNA of DC's on the guns
- Two guns in Beverly house are not DC's (Natalie's guns)
- Despite CI trying to bait DC to admit to guns, there was no admission or response. BS 8140.
- No evidence that DC ever accessed the storage unit or knew about the guns there. Storage unit was in Jacobo's name and the last time he used it or accessed it was in December 2014.

**No Money Laundering**
- Lorraine's report – no evidence of "cash" contribution in the amount of $330,000.
- Legitimate sources of income – cannot conclude that any cash contribution must have been drug proceeds.

**No Scion**
- CS never told officers about the vehicle while he was actively making controlled buys or during his extensive debriefing on February 26, 2015. (BS 10-23). It is unclear when CS told officer about the Scion. It seems it must have been between February 26 and April 14, 2015,
- Officers did no title or registration searches or anything else, whatsoever, to corroborate the allegations relating to the Scion. The SW states "the confidential source has identified this car as a trap car and a possible location for stored narcotics." BS 382.
- CS told officers he accessed the car 100's of times, but
- Clearly the Daza-Cortez photos and personal letters were planted. They were previously in his Silverado that others had access to at Sky's Auto – he was selling the truck through Jacobo.
- No fingerprints or DNA of Daza-Cortez on the guns in the Scion
- No fingerprints anywhere else in the Scion
- Scion is now auctioned and evidence is "destroyed" -- motion on destruction of evidence, will be asking to suppress all evidence from Scion
- Need to hire a fingerprint expert on the prints found on the bags (Ex. 501, 502)

**Drug Quantity / Evidence**

- Only the two buys where DC did a hand-to-hand transaction + evidence on phone calls = **89 grams of meth** (note: still level 30 and 10 year MM just on this quantity)
- Must call CI to be able to get evidence of controlled buys in at trial
- Can either agree to all controlled buys – 783 grams of meth, or just the ones they can prove DC did hand-to-hand contact.

Daza-Cortez Negotiation Memorandum
Page 7

**Forfeiture**

Government wants forfeiture of:

- $35,790 found in the Scion;                          **YES**
- $8,810 from DC's home            **NO – rental income proceeds**
- the two firearms from his home and 17 firearms and all ammunition located in the storage unit;                          **YES – but the 2 guns in Beverly home are Natalies**

   **and the 17 guns in the storage unit are not his**
- the 2008 Cadillac Escalade;                          **NO ?**
- the entirety of DC's ownership stake in Avocado's;          **NO!  See Lorraine's Report**
- $60,852.38 in a Union Bank account;      **NO!     See Lorraine's Report**
- $15,500 in a Union Bank account; **and**      **NO!     See Lorraine's Report**
- A sum of money not less than $367,500      **NO!     See Lorraine's Report**

Ex-3

The Law Offices of

# EMILY M. GAUSE

1001 Fourth Avenue, Suite 4400
Seattle, WA 98154

---

**EMILY M. GAUSE**
Attorney at Law

**TELEPHONE**
206-660-8775

**EMAIL**
emily@emilygauselaw.com

**FAX**
206-389-1708

**Sarah Vogel**
**Andy Colasurdo**
Assistant United States Attorney
Western District of Washington

January 4, 2016

Dear Ms. Vogel and Mr. Colasurdo:

This constitutes defendant's supplemental request for discovery, specifically for any and all exculpatory information pursuant to Brady v. Maryland, 373 U.S. 83 (1963). This requires the State to reveal any information it actually or constructively possess and which information is favorable to the defendant and material to the issue of guilt or punishment, or **in any way discredits the State's case**. Brady v. Maryland, 373 U.S. 83, 87 (1963); CrR 4.7. Although the Brady rule often is phrased in terms of information "known to the prosecution," the prosecution's "knowledge" for this purpose extends beyond the personal knowledge of the prosecuting attorney representing the State at trial. Giglio v. United States, 405 U.S. 150, 154 (1972). "The individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." Kyles v. Whitley, 514 U.S. 419, 437 (1995). That duty is not triggered by a defense request for such material, instead "Brady obligations extend to favorable evidence not specifically requested by the defense. United States v. Agurs, 427 U.S. 97, 110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). A prosecutor must resolve doubts regarding disclosure *in favor of sharing the evidence* with the defense. Kyles at 437. This includes evidence that impeaches any state witness in anyway. Id. Due process requires disclosure of any evidence that provides any grounds for the defense to attack the reliability, thoroughness, and good faith of any investigation, to impeach the credibility of any state witness, and to bolster the defense case. Id. Information requested pursuant to Brady need not be admissible evidence to be subject to disclosure to defense counsel. Coleman v. Calderon, 150 F.3d 1105, 117 (9th Cir. 1998).

Brady evidence includes any information that is favorable to the defendant on the issue of punishment. Therefore, *anything* mitigating in any way known to the prosecutor's office or the police must be disclosed to defense prior to sentencing. If there if any information possessed by the State, either actually or constructively, that could support any argument for a lesser sentence, that information must be disclosed.

1

Further, <u>Brady</u> obligations continue even after a guilty plea. Otherwise, "prosecutors may be tempted to deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas." <u>Sanchez v. United States</u>, 50 F.3d 1448, 1453 (9th Cir. 1995). A defendant challenging the voluntariness of a guilty plea may assert a <u>Brady</u> claim. <u>Id.</u>

"Exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does." <u>United States v. Price</u>, 556 F.3d 900, 914 (9th Cir. 2009). That would undermine <u>Brady</u> by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it...." <u>Id.</u> (quoting <u>United States v. Zuno-Arce</u>. 44 F.3d 1420, 1427 (9th Cir.1995)). "Actual awareness, or lack thereof, of exculpatory evidence in the government's hands, is not determinative of the prosecution's disclosure obligations; rather, the prosecution has a duty to learn of any exculpatory evidence known to others acting on the government's behalf." <u>Carriger v. Stewart</u>, 132 F.3d 463, 479-80 (9th Cir.1997) (en banc).

Specifically, the defendant is requesting the following:

(1) **Impeachment material:**  Any material evidence which bears on the credibility of the confidential informant(s) and any other government witness, even if that witness will not testify at trial. This includes evidence demonstrating bias, prejudices, possible motives for lying or exaggerating, and prior bad acts. *See* <u>United States v. Abel</u>, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984).  This also includes any ulterior motives of the witness or evidence that tests the witness's perception or memory. <u>Davis v. Alaska</u>, 415 U.S. 308, 94 S.Ct 1105, 39 L.Ed.2d 347 (1974). This would include any information that the witness was under the influence of drugs at any point when he was cooperating with law enforcement or providing information.

(2) **Criminal History:** Any and all records and information revealing the informant or witness's prior felony convictions; convictions for crimes involving false statements or dishonesty; relevant "rap" sheets and/or NCIC computer check on the informant; and the informant's entire criminal record, including prison and jail records, and any information therein which bears on credibility. <u>See Carriger v. Stewart</u>, 312 F.3d 463, 480 (9th Cir. 1997); <u>United States v. Alvarez-Lopez</u>, 559 F.2d 115 (9th Cir. 1977); Fed.R.Evid. 609.

(3) **Prior Bad Acts:** Any and all records and information revealing prior misconduct or bad acts attributed to the witness, including, but not limited to, acts conducted by the witness. Fed.R.Evid. 608(b). This falls under impeachment material that must be disclosed under <u>Giglio v. United States</u>, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

(4) **Consideration, promises, leniency:** Any and all consideration or promises of consideration given to the witness, or expected or hoped for by the witness. "Consideration" means anything, whether bargained for or not, which arguably could be of value or use to the witness or of persons of concern to the witness, including formal or informal and direct or indirect leniency, favorable treatment or recommendations, or other assistance with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil, tax court, I.R.S., court of claims, administrative, or other dispute with the United States. "Consideration" also means any favorable treatment or recommendations with respect to criminal, civil or tax immunity grants, relief from forfeiture, monetary payments, permission to keep the fruits of criminal activity - such as cash, vehicles, aircraft, real property, rewards or fees - witness fees and special witness fees, provisions of food, clothing, shelter, transportation, legal services or other benefits, placement in a "witness protection program," and anything else which could possibly reveal an interest, motive, or bias in favor of the government or against the defense or which could act as an inducement to testify or to color testimony. See

Giglio, supra; Guam v. Dela Rosa, 644 F.2d 1257 (9th Cir. 1980).  United States v. Goff, 857 F.2d 149, 161 (5th Cir. 1988) *See also* Bagley, 473 U.S. 667 (failure of government to disclose that it paid security guards to provide information incriminating the defendant was a Brady violation); U.S. v. Sipe, 388 F.3d 471, 488 (5th Cir. 2004) (Brady required government to disclose that prosecution witnesses received "Social Security cards, witness fees, permits allowing travel to and from Mexico, travel expenses, living expenses, some phone expenses, and other benefits").

(5) **Threats:**  Any and all threats, express or implied, direct or indirect, or other coercion made or directed against the witness, criminal prosecutions, investigations, or potentially pending prosecutions or which could be initiated, any probationary, parole, deferred prosecution, or custodial status of the witness and any civil, tax court, court of claims, administrative, or other pending or potential legal disputes or transactions with the government or over which the government has a real, apparent, or perceived influence. Davis v. Alaska, 15 U.S. 308, 94 S.Ct 1105, 39 L.Ed.2d 347 (1974); Alvaerz-Lopez, supra; United States v. Sutton, 542 F.2d 1239 (4th Cir. 1976).

(6) **Prior Testimony:**   The existence and identification of each occasion on which the witness has testified before this Court, the grand jury, or other body or tribunal in connection with this or related cases. Alvarez-Lopez, supra; Johnson v. Brewer, 521 F.2d 556 (8th Cir. 1975).

(7) **Capacity to Testify:**   Any evidence, including any medical or psychiatric/psychological reports or evaluations, tending to show that the witness's ability to perceive, remember, communicate, or tell the truth is impaired or that the witness has used narcotics or other controlled substances or has been an alcoholic. United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988); United States v. Bernard, 625 F.2d 854 (9th Cir. 1980); United States v. Butler, 567 F.2d 885 (9th Cir. 1978).

I request the timely production of any materials that are required to be disclosed under Brady and its progeny.  This information should be disclosed as soon as it is discovered.  The government, now put on notice, should inquire about potential Brady evidence from anyone in its office or anyone in law enforcement's office related to this case.

Please advise me of any questions or concerns.

Thank you,

Emily M. Gause
LAW OFFICES OF EMILY M. GAUSE, PLLC
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154

3

**From:** Emily M. Gause [mailto:emily@emilygauselaw.com]
**Sent:** Wednesday, January 4, 2017 3:32 PM
**To:** Vogel, Sarah (USAWAW) <SVogel@usa.doj.gov>; Colasurdo, Andy (USAWAW) <AColasurdo@usa.doj.gov>
**Subject:** Roland Daza-Cortez Supplemental Discovery Request

Sarah and Andy,

Please see defendant's supplemental discovery request.  I specifically request any consideration, promises, criminal history, and impeachment material pertaining to Fernando Garcia and Jacobo Lucio Alvear.  I also want to know whether either of these two witnesses will be called by the government at trial.

I expect to have Lorraine Barrick's report in the next couple of weeks and would like to discuss resolution after that point.  I'll present you both a proposal of the issues as I see them, any evidentiary issues I plan to raise, and an endorsed offer from Mr. Daza-Cortez.  At that point, we can discuss.

Thank you,

--
**Emily M. Gause**
Attorney at Law
The Law Offices of Emily M. Gause, PLLC
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
Phone:  206-660-8775
Fax:  206-389-1708

Website  |  LinkedIn  |  Avvo
*Criminal defense throughout the State of Washington*

The information contained in this electronic communication is personal, privileged and/or confidential information intended only for the use of the individual(s) or entity(ies) to which it has been addressed. If you read this communication and are not the intended recipient, you are notified that any dissemination, distribution or copying of this communication, other than delivery to the intended recipient is strictly prohibited. If you have received this communication in error, please notify the sender immediately by reply e-mail. Thank you.

**Emily M. Gause**
Attorney at Law
Gause Law Offices, PLLC
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
Phone:  206-660-8775
Fax:  206-389-1708

Website  |  LinkedIn  |  Avvo
*Criminal defense throughout the State of Washington*

The information contained in this electronic communication is personal, privileged and/or confidential information intended only for the use of the individual(s) or entity(ies) to which it has been addressed. If you read this communication and are not the intended recipient, you are notified that any dissemination, distribution or copying of this communication, other than delivery to the intended recipient is strictly prohibited. If you have received this communication in error, please notify the sender immediately by reply e-mail. Thank you.

**From:** Colasurdo, Andy (USAWAW) [mailto:Andy.Colasurdo@usdoj.gov]
**Sent:** Thursday, January 12, 2017 5:52 PM
**To:** Emily M. Gause <emily@emilygauselaw.com>
**Cc:** Wolgamuth, Karen (USAWAW) <Karen.Wolgamuth@usdoj.gov>; Vogel, Sarah (USAWAW) <Sarah.Vogel@usdoj.gov>
**Subject:** RE: Roland Daza-Cortez Supplemental Discovery Request - REVISED

Hi Emily,

Thanks for your email.

As we indicated in our earlier email, we will turn over any *Brady* material as it is discovered.

As for *Giglio* material, we are only obligated to turn over impeachment information related to the witnesses we intend to call at trial. At this point, we have not made a final decision as to whether we are going to call the witnesses you referenced in your letter. While it is certainly likely that we will call the CS, it is not a sure thing as we can prove the case without him. Furthermore, there are additional privacy and safety interests that would merit delaying the production of such information about the CS until we are closer to trial. Perhaps most importantly, we are unaware of any rule that requires us to engage in plea negotiations at all, never mind a rule that requires us to continue to engage in negotiations after we have provided pre-trial witness disclosures. If you are aware of such a rule or case law, please direct our attention to it.

As it stands now, based on our current proposed timeline for negotiations and assuming negotiations fail, the impeachment information that we have gathered to date would likely be turned over to you shortly after the February 1, 2017 deadline for negotiations. In your email, you indicated that you may file a motion to compel. Any motion will only serve to end negotiations.

Finally, your email did not all address your discovery obligations. So again, we renew our request for discovery. *See* Fed. R. Crim. P. 16(b)(1)(A).

**C. Andrew Colasurdo**
Assistant United States Attorney
Criminal Enterprises Unit
(206) 553-4075

**From:** Emily M. Gause [mailto:emily@emilygauselaw.com]
**Sent:** Wednesday, January 11, 2017 3:44 PM
**To:** Vogel, Sarah (USAWAW) <SVogel@usa.doj.gov>
**Cc:** Wolgamuth, Karen (USAWAW) <KWolgamuth@usa.doj.gov>; Colasurdo, Andy (USAWAW) <AColasurdo@usa.doj.gov>
**Subject:** RE: Roland Daza-Cortez Supplemental Discovery Request - REVISED

I disagree with your analysis about when Brady/Giglio information is required to be disclosed. If we cannot agree on this, I will file a motion to compel noted for next Friday. This type of information should be disclosed before a defendant must make a decision whether to plead guilty.

Please let me know your position by tomorrow.

Thank you,
--
**Emily M. Gause**
Attorney at Law
The Law Offices of Emily M. Gause, PLLC
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
Phone: 206-660-8775
Fax: 206-389-1708

Website  |  LinkedIn  |  Avvo
*Criminal defense throughout the State of Washington*

The information contained in this electronic communication is personal, privileged and/or confidential information intended only for the use of the individual(s) or entity(ies) to which it has been addressed. If you read this communication and are not the intended recipient, you are notified that any dissemination, distribution or copying of this communication, other than delivery to the intended recipient is strictly prohibited. If you have received this communication in error, please notify the sender immediately by reply e-mail. Thank you.

**From:** Vogel, Sarah (USAWAW) [mailto:Sarah.Vogel@usdoj.gov]
**Sent:** Tuesday, January 10, 2017 10:37 AM
**To:** Emily M. Gause <emily@emilygauselaw.com>
**Cc:** Wolgamuth, Karen (USAWAW) <Karen.Wolgamuth@usdoj.gov>; Colasurdo, Andy (USAWAW) <Andy.Colasurdo@usdoj.gov>
**Subject:** Roland Daza-Cortez Supplemental Discovery Request - REVISED

Hi Emily,

We received this request.   As always, any *Brady* material will be disclosed as discovered.  We take this opportunity to, once again, renew our request for reciprocal discovery under Federal and Local Criminal Rule 16, which impose discovery obligations on the defense as well as the government.  To date, despite numerous requests, you have provided nothing to us nor offered us any opportunity to inspect defense-controlled evidence.  *See* Fed. R. Crim. P. 16(b)(1)(A).

You have requested numerous specific items of impeachment information.  Impeachment information is subject to disclosure in the context of the witness(es) testifying, so we generally would not disclose such impeachment information if we are still actively negotiating a plea that would eliminate the need for the testimony.  Your cover email suggests you want to keep negotiations open for "the next couple of weeks."  To make that possible, we will continue our already ongoing work to gather and prepare witness impeachment packets, but will not actually turn them over until negotiations close.

You should assume that we may call either or both of the witnesses you mention, below.  We already have provided you with numerous reports with their *Jencks* statements.  Of course, we reserve the right not to call any particular witness, whether included on our witness list or not, depending on the precise nature of other testimony/evidence and the nature of the defense (still entirely unknown to us).

Given our current timetable, with pretrial motions due February 6th, I would expect we will close negotiations not later than February 1, 2017.  We look forward to hearing your proposals and engaging in any constructive dialogue about resolution well in advance of that deadline.  If you'd like to change this timeline, please give us a call.

*Sarah Y. Vogel*
*Assistant U.S. Attorney*
*700 Stewart St., #5220*
*Seattle, WA  98101*
*206-553-2074 – desk*
*206-553-4440 – fax*

emily@emilygauselaw.com

| | |
|---|---|
| **From:** | Colasurdo, Andy (USAWAW) <Andy.Colasurdo@usdoj.gov> |
| **Sent:** | Thursday, January 19, 2017 9:29 AM |
| **To:** | emily@emilygauselaw.com |
| **Cc:** | Wolgamuth, Karen (USAWAW); Vogel, Sarah (USAWAW) |
| **Subject:** | RE: Roland Daza-Cortez Supplemental Discovery Request - REVISED |

Emily,

We would prefer to get the discussions started earlier rather than later.  So, assuming this time still works for you, let's plan on having a conference call on Monday, January 23rd at 4:30.  Would you like us to call you?  If so, what number would you prefer we call?  If you want to call us, you can call Sarah's office at 553-2074.

Take care.


**C. Andrew Colasurdo**
Assistant United States Attorney
Criminal Enterprises Unit
(206) 553-4075



**From:** emily@emilygauselaw.com [mailto:emily@emilygauselaw.com]
**Sent:** Wednesday, January 18, 2017 2:42 PM
**To:** Colasurdo, Andy (USAWAW) <AColasurdo@usa.doj.gov>
**Cc:** Wolgamuth, Karen (USAWAW) <KWolgamuth@usa.doj.gov>; Vogel, Sarah (USAWAW) <SVogel@usa.doj.gov>
**Subject:** RE: Roland Daza-Cortez Supplemental Discovery Request - REVISED

Andy,

I am not sure what you are referring to in your discovery request.  If you are fishing for something specific, please just tell me.

I anticipate having Lorraine Barrick's report on the money laundering allegations by Friday or early next week.  I plan on sharing that report with you and putting aside significant time next week to negotiate with you two.  I have emails and summaries of work completed by my investigator Greg Walsh, but am asking him to compile that into a report form by next week as well.  Mr. Walsh has been out on medical leave the last 2 weeks.

We could do an in-person meeting on Monday 1/23 at 4:30-5:30 (or phone call).  Or we could do a phone meeting Tuesday 1/24 in the morning.  Or we could do an in person or phone call meeting Wednesday 1/25.  I have blocked off Thursday 1/26 to prepare motions in this case.

As of now, given that I hope we can resolve this case, I am going to hold off on a motion to compel.  I disagree about when impeachment information must be disclosed and would point you to Judge Jones' recent order in US v. Frazier about this very issue (attached).  If we cannot get somewhere by the end of next week, I plan to move ahead with filing motions, including a motion to compel for this information if necessary.

Please let me know what your schedule looks like for next week.  Looking forward to speaking with you.

emily@emilygauselaw.com

| From: | emily@emilygauselaw.com |
|---|---|
| Sent: | Sunday, February 19, 2017 11:04 AM |
| To: | 'Colasurdo, Andy (USAWAW)'; 'Vogel, Sarah (USAWAW)' |
| Subject: | Daza-Cortez Discovery Inquiry |

Sarah and Andy,

It seems clear from the discovery, the search warrant affidavits, and the newly disclosed transcripts of grand jury testimony that we still do not have all of the relevant materials pertaining to Fernando Garcia Ballardo, aka the CS, and the Scion. What had already been apparent now seems resoundingly clear in light of Agent Williams's grand jury testimony.

Bates 380-383 is the first mention of the Scion: during surveillance on Mendoza-Garcia on April 14, 2015, agents "located a blue 2007 Toyota Scion, bearing Washington license 303ZJH, parked at the business. The confidential source has identified this car as a trap car, and a possible location for stored narcotics." Williams repeats this assertion in his affidavits. But, the government has never produced any information how and when the CS specifically identified the Scion.

The search warrant affidavits, in turn, reference an alleged incident on August 26, 2014 during which Mr. Daza-Cortez allegedly called Eribay from Sky's and instructed Eribay and Fernando to move the Scion. We have no discovery relating to that alleged event or how and when Fernando made this allegation to law enforcement.

Finally, during his January 7, 2016 grand jury testimony, Williams averred that Fernando sent him a photo of the Scion, gave him the plate number, and told him: "I guarantee you there's going to be drugs or something inside this vehicle." Williams then related the tale about Mr. Daza-Cortez, Eribay, Fernando, and the Scion on August 26, 2014. Bates 10080-83. We have no discovery relating to any of this, which is very concerning given that the entire probable cause for the Scion is founded upon Fernando's allegations as to August 26, 2014, when the Scion was still registered to him. This seems to go directly towards his credibility and his knowledge of the mechanics of the vehicle.

Perhaps we are in error and somehow overlooked these particular documents amidst the thousands of pages of discovery. If so, a gentle nudge in the right direction would be greatly appreciated.

Otherwise, please produce any and all investigative reports and agents' notes of interviews which detail how and when Fernando pointed out the Scion to law enforcement as well as anything which generally pertains to the Scion.

Thank you,

**Emily M. Gause**
Attorney at Law
Gause Law Offices, PLLC
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
Phone: 206-660-8775
Fax: 206-389-1708

Website | LinkedIn | Avvo
*Criminal defense throughout the State of Washington*

1

**From:** "Vogel, Sarah (USAWAW)" <Sarah.Vogel@usdoj.gov>
**Date:** February 21, 2017 at 10:17:33 AM PST
**To:** "emily@emilygauselaw.com" <emily@emilygauselaw.com>, "Colasurdo, Andy (USAWAW)" <Andy.Colasurdo@usdoj.gov>
**Cc:** "Wolgamuth, Karen (USAWAW)" <Karen.Wolgamuth@usdoj.gov>
**Subject: RE: Daza-Cortez Discovery Inquiry**

Hi Emily,

The referenced photo of the Scion is in the CS text messages at Bates 008801.

Our agent is out of town for a few days, but we will raise your concerns with him at our next meeting later this week. It is certainly our intention to make sure you get everything to which you are entitled. syv


*Sarah Y. Vogel*

*AUSA – WDWA*

*206-553-2074 – ofc*

*206-553-4440 – fax*




**From:** emily@emilygauselaw.com [mailto:emily@emilygauselaw.com]
**Sent:** Sunday, February 19, 2017 11:04 AM
**To:** Colasurdo, Andy (USAWAW) <AColasurdo@usa.doj.gov>; Vogel, Sarah (USAWAW) <SVogel@usa.doj.gov>
**Subject:** Daza-Cortez Discovery Inquiry


Sarah and Andy,


It seems clear from the discovery, the search warrant affidavits, and the newly disclosed transcripts of grand jury testimony that we still do not have all of the relevant materials

pertaining to Fernando Garcia Ballardo, aka the CS, and the Scion. What had already been apparent now seems resoundingly clear in light of Agent Williams's grand jury testimony.

Bates 380-383 is the first mention of the Scion: during surveillance on Mendoza-Garcia on April 14, 2015, agents "located a blue 2007 Toyota Scion, bearing Washington license 303ZJH, parked at the business. The confidential source has identified this car as a trap car, and a possible location for stored narcotics." Williams repeats this assertion in his affidavits. But, the government has never produced any information how and when the CS specifically identified the Scion.

The search warrant affidavits, in turn, reference an alleged incident on August 26, 2014 during which Mr. Daza-Cortez allegedly called Eribay from Sky's and instructed Eribay and Fernando to move the Scion. We have no discovery relating to that alleged event or how and when Fernando made this allegation to law enforcement.

Finally, during his January 7, 2016 grand jury testimony, Williams averred that Fernando sent him a photo of the Scion, gave him the plate number, and told him: "I guarantee you there's going to be drugs or something inside this vehicle." Williams then related the tale about Mr. Daza-Cortez, Eribay, Fernando, and the Scion on August 26, 2014. Bates 10080-83. We have no discovery relating to any of this, which is very concerning given that the entire probable cause for the Scion is founded upon Fernando's allegations as to August 26, 2014, when the Scion was still registered to him. This seems to go directly towards his credibility and his knowledge of the mechanics of the vehicle.

Perhaps we are in error and somehow overlooked these particular documents amidst the thousands of pages of discovery. If so, a gentle nudge in the right direction would be greatly appreciated.

Otherwise, please produce any and all investigative reports and agents' notes of interviews which detail how and when Fernando pointed out the Scion to law enforcement as well as anything which generally pertains to the Scion.

Thank you,

**emily@emilygauselaw.com**

| | |
|---|---|
| **From:** | emily@emilygauselaw.com |
| **Sent:** | Monday, January 23, 2017 10:38 PM |
| **To:** | 'Vogel, Sarah (USAWAW)'; 'Colasurdo, Andy (USAWAW)' |
| **Subject:** | Daza-Cortez Offer to Resolve |
| **Attachments:** | Daza Cortez Money Laundering Preliminary Report.pdf |

Sarah and Andy,

Mr. Daza-Cortez will agree to resolve this case to a mandatory minimum of 5-years on the drugs from the controlled buys attributed to him, with an agreement from the government not to recommend more than 84 months at sentencing.   He will not agree to plead to any evidence found in the Toyota Scion at Sky's Auto, the guns in the storage unit rented by Jacobo, any 924(c) or to the money laundering.  Lorraine Barrick's report is attached.  I anticipate providing Greg Walsh's reports to you later tonight.

I look forward to discussing further.  My client and I are motivated to get this on for a change of plea hearing before February 1.

Thanks,

**Emily M. Gause**
Attorney at Law
Gause Law Offices, PLLC
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
Phone:  206-660-8775
Fax:  206-389-1708

Website | LinkedIn | Avvo
*Criminal defense throughout the State of Washington*

The information contained in this electronic communication is personal, privileged and/or confidential information intended only for the use of the individual(s) or entity(ies) to which it has been addressed. If you read this communication and are not the intended recipient, you are notified that any dissemination, distribution or copying of this communication, other than delivery to the intended recipient is strictly prohibited. If you have received this communication in error, please notify the sender immediately by reply e-mail. Thank you.

emily@emilygauselaw.com

| | |
|---|---|
| **From:** | Colasurdo, Andy (USAWAW) <Andy.Colasurdo@usdoj.gov> |
| **Sent:** | Wednesday, January 25, 2017 4:32 PM |
| **To:** | emily@emilygauselaw.com |
| **Cc:** | Vogel, Sarah (USAWAW); Wolgamuth, Karen (USAWAW) |
| **Subject:** | Daza Cortez:  Proposed Plea Agreement |
| **Attachments:** | Daza Plea Agr Draft 7.pdf |

Emily,

After taking time to review your financial analyst's report and to consider your client's proposal, we have prepared a proposed plea agreement which is attached to this email.  Below are some things to note about our current proposal.

**Charges**

This proposal allows your client to plead guilty to a 5-year mandatory minimum drug offense, as opposed to the 10-year mandatory minimum offense as currently charged.  This plea agreement also requires your client to plead guilty to one count of money laundering.  Under this proposal, however, we are allowing him to plead guilty to Count 9 (related to the Escalade), rather than to Count 6 (related to Avocados).  This plea agreement also does not require your client to plead guilty to the 924(c) offense, or any other firearm-related offense.  This concession eliminates a 5-year mandatory minimum offense that would have to be served consecutive to the 5-year mandatory minimum term on the drug count.  Thus, as currently proposed, your client would only face a 5-year mandatory minimum sentence if he accepts this offer, not the 10-year mandatory minimum we previously proposed or the potential 15-year mandatory minimum he would face if he is convicted at trial (assuming the current policy of not "stacking" multiple 924(c) sentences continues).

**Facts**

The fact section also takes several of your client's concerns in to account.  For example, the language previously included, that characterized your client as the leader, has been removed.  In addition, all references to the storage locker and the firearms found within it have been removed.  We also eliminated any reference to the firearms found at his residence.  While the fact section continues to reference the items found in the Scion, albeit in a greatly watered-down fashion, the plea agreement simply states that evidence would establish the fact that the items were found, not that your client admits any connection to the Scion or its contents.  Further, the plea agreement explicitly states that your client will likely argue that the evidence connected to the Scion should not be considered relevant conduct.  Finally, the facts pertaining to Avocados restaurant (Count 6) have been replaced with the facts supporting the Money Laundering charge related to the Escalade (Count 9).

1

## Guidelines Calculations

The Guidelines calculations take into the actual amounts of methamphetamine now that we have those results. But consistent with the revised fact section, he is only agreeing to be held accountable for the methamphetamine recovered from the vehicle in August 2014 and the controlled buys to the CS between November 2014 and March 2015. The drugs recovered for the Scion are not included in this calculation. Also, consistent with the concessions made in the fact section, your client no longer has to agree to a 2-level leadership enhancement. In addition, he does not have to agree to a 2-level firearm enhancement. This enhancement did not previously apply because under the old proposal he was required to plead guilty to the 924(c) offense; without the 924(c) offense it could now apply.

## Forfeiture

There are a couple key components to this section. First and foremost, this proposal does not require your client to give up his interest in Avocados. This is a major concession and addresses one of your client's primary concerns – his ownership interest in the restaurant. Furthermore, under this proposal, in addition to the funds and guns that already have been administratively forfeited, your client would only be required to forfeit his interest in the following contested assets: (1) the Cadillac Escalade, (2) the $60,852.38 and $4,179.29 seized from the Union Bank accounts, and (3) the $71,973.50 already seized as payments from Avocados, plus any subsequent payments made prior to the entry of his plea. Once a plea is entered, those payments will no longer go to the United States. Thus, the sooner your client pleads guilty, the more money he saves for himself. As it currently stands, we collect approximately $4,000 per month.

If your client does not accept the plea agreement and he proceeds to trial because he cannot accept the forfeiture as proposed, he needs to realize that his position as to forfeiture will likely not improve and could get much worse, even if the government fails to prove the money laundering counts. Assuming we prevail on the drug charges, we could present testimony in the forfeiture phase of the trial as to the amount of drugs distributed and gross sales. This amount could be named as a Forfeiture Money Judgment (FMJ) and we could then forfeit any assets wherein he has a nexus, as a substitute asset. Assuming the gross sales would be greater than the $140,000 or so we have already seized, we would name what we have on hand as a substitute asset. Further, we would name his interest in the restaurant as substitute asset and continue to collect his draws until the FMJ was satisfied.

## Recommendation

Finally, due to the concessions made with respect to the charges your client would be pleading guilty to, he would no longer face a mandatory minimum 10-year sentence. Instead, he would face only a 5-year mandatory minimum. In addition, not only have we agreed to remove the 10-year floor, we have also agreed to come off our prior recommendation of 10 years and limit

2

ourselves to recommending a sentence of no greater than 9 years (108 months). In exchange for this, and all the other concessions contained in the plea agreement, your client would be required to request nothing less than a sentence of 7 years (84 months).

Ultimately, we believe that our current proposal is very generous and takes into account the lion share of your client's concerns. We believe this offer is generous because we have essentially three separate ways to obtain a 10-year mandatory minimum sentence – by connecting him to (1) the drugs found in the car in August 2014, (2) the drugs sold to the CS, or (3) the drugs recovered from the Scion. We believe the evidence with respect to each is very strong. Moreover, based on the anticipated testimony of the CS and other witnesses, as well as the letters/pictures found next to the guns and the bags of drugs – bags of drugs that had your client's and a co-conspirator's fingerprints on them – we are confident that we can tie your client to the Scion and have a very good chance of prevailing on the 924(c) count. That, of course, in combination with a conviction to a (b)(1)(A) drug offense would mean that your client would be serving the next 15 years in prison, at a minimum. Furthermore, his Guidelines range, even after acceptance of responsibility, could be as high as 262 to 327 months. Post-trial, it could be as high as 360 to life. Finally, regarding forfeiture, our proposal provides for a much better outcome than he could hope to expect after a trial, even assuming we do not prevail on any money laundering counts.

**The deadline to accept this offer is Monday, January 31, 2017.** The plea must be entered by that date.

Thanks again for taking the time to discuss the case and your client's position. We looking forward to hearing from you about your client's intentions moving forward.

Take care.

C. Andrew Colasurdo
Assistant United States Attorney
Criminal Enterprises Unit
(206) 553-4075

3

product) are not required to be transferred or disclosed under RPC 1.16 (See WSBA Advisory Opinion 181).  However, I would be happy to answer questions you have and provide any help I can to Roland.

Thank you,

**Emily M. Gause**
Attorney at Law
Gause Law Offices, PLLC
130 Andover Park East, Suite 300
Tukwila, WA 98188
Phone:  206-660-8775
Fax:  206-260-7050

Website   |   LinkedIn   |   Avvo
*Criminal defense throughout the State of Washington*

The information contained in this electronic communication is personal, privileged and/or confidential information intended only for the use of the individual(s) or entity(ies) to which it has been addressed. If you read this communication and are not the intended recipient, you are notified that any dissemination, distribution or copying of this communication, other than delivery to the intended recipient is strictly prohibited. If you have received this communication in error, please notify the sender immediately by reply e-mail. Thank you.

**From:** Yan Shrayberman |mailto:yanesq@icloud.com]
**Sent:** Tuesday, August 15, 2017 9:36 PM
**To:** Emily M. Gause <emily@emilygauselaw.com>
**Subject:** Request for Further Discovery (Rollando Daza-Cortez)

Good afternoon Mrs. Gause,

I've received the discovery box you sent over ,and I thank you for that. Inside the box were a number of CD's, documentation and index of the CD's and an envelope with original receipts from the business. Please send me your notes you took in this case as ell as email between your self and the AUSA's. I believe that would complete the file.

Thank you in advance

Yan

Ex-4

96/06/2016 16:38 IFAX rwfax@riddellwi!.                    → RWFax        @001/001
Jun 06 16 03:41p    Lalos Trucking    (                5590  5305        p.1

The Law Offices of

# EMILY M. GAUSE

### 1001 Fourth Avenue, Suite 4400
### Seattle, WA 98154

**EMILY M. GAUSE**
Attorney at Law

**TELEPHONE**
206-660-8775

**EMAIL**
emily@emilyganselaw.com

**FAX**
206-389-1708

## FEE AGREEMENT

This fee agreement (hereinafter "Agreement") is entered between Emily M. Gause (hereinafter "Attorney"), Florinda Cortez (hereinafter "Payor"), and Rolando Daza-Cortez (hereinafter "Client") to represent Mr. Daza-Cortez in United States District Court Cause No. 15-00269-RAJ. This agreement shall not take effect and Attorney has no obligation to provide legal services until a signed copy of this Agreement is received and timely payment of the flat fee deposit is paid in full.

## CLIENT, ATTORNEY, AND PAYOR MUTUALLY AGREE AS FOLLOWS:

1.    <u>Scope of Representation.</u>   Client agrees to retain the Attorney to represent him in the case identified below.

<u>United States of American v. Roland Jess Daza-Cortez</u>, CR15-00269-RAJ
Conspiracy to Distribute Controlled Substances
Possession of Methamphetamine with Intent to Distribute
Possession of a Firearm in Furtherance of Drug Trafficking Crime 924(c)
Possession of Stolen Firearms
Money Laundering

Services to include: all investigation up to trial including representation at pretrial hearings and, if necessary, sentencing.

Services of Attorney <u>**do not include**</u> a bench/jury trial.
Services of Attorney <u>**do not include**</u> complex evidentiary pretrial hearings ("mini-trials" with witnesses)

The services provided by the Attorney will include all legal representation reasonably necessary to defend the client up to trial. This agreement <u>**does not**</u> include a trial fee, which will be based on the estimated length of trial and complexity of issues, and will be subject to a separate

Page 1 of 4

agreement entered in no less than 30 days prior to the trial date. Further, this agreement does not cover complex evidentiary pretrial hearings ("mini-trials" with witnesses), which are not common but could arise in the client's case.

This Agreement does not include representation of client in any of the following proceedings: direct or interlocutory appeal, retrial of the case after a mistrial or hung jury, civil or administrative hearings (even if related to the criminal case), motions for discretionary review, probation/sentence modification hearings, or post-sentencing hearings. This Agreement is specifically limited to representation in the case described above, and does not extend to any other legal proceedings in which clients may be involved. Should Client choose to retain the Attorney in any other capacity, a separate fee agreement shall be negotiated.

2.    Legal Fees.   Upon signing this Agreement, Client agrees to pay a flat legal fee in the amount of fifteen thousand dollars ($15,000). This flat fee deposit is earned by the Attorney when paid. Paying the flat legal fee does not affect the Client's right to terminate the lawyer-client relationship. The flat legal fee will not be placed in a trust account. The Client may or may not be entitled to a partial refund if Attorney's representation is terminated before the agreed legal work is completed. Earned legal fees and costs are not refundable under any circumstances and are not contingent on the outcome of any matter. This flat legal fee is subject to Rule 1.5 of the Washington State Rules of Professional Conduct.

Client and Attorney have agreed that $15,000 must be paid by _____.

Should this matter go to trial, the Client and Attorney will agree on additional legal fees and possible costs to be paid by the Client in a separate agreement, due 30 days prior to trial.

If the attorney-client relationship is terminated early, before completion of the scope of representation, client may request an accounting for all legal fees and costs earned to date. Attorney will bill client at a rate of $250.00 an hour for the attorney's time. The minimum billing increment is one tenth of an hour. Earned legal fees are not refundable under any circumstances and are not contingent on the outcome of any matter.

3.    Costs and Other Charges.   Client and Payor agree to pay additional costs and expenses related to the Attorney's legal representation. Costs include, but are not limited to: investigation fees, retaining experts or consultants, court reporter fees, transcription, notary fees, long distance telephone charges, photocopies (15 cents per page), messenger service, postage, travel (including transportation, mileage at 57.5 cents per mile, lodging, meals), and all other out-of-pocket expenses. **Major expenses (including investigation and expert services) will be paid directly by client.** In the event Client and/or Payor fail to provide sufficient funds to cover Costs, the Attorney is not required to pay Costs. Payment of Costs is solely the Client and Payor's responsibility and payment of the legal fees set forth in section 2 of this Agreement does not satisfy this separate obligation to pay Costs.

06/06/2016 16:43 IFAX rwfax@riddellwilliams.com
Jun 06 16 03:46p      Lalos Trucking                                            559(    ;305       @001/001
                                                                                                  p.1

4.    <u>Cooperation of Client.</u>  Client agrees to keep the Attorney informed of his or her address and other contact information, including a current phone number, and to appear at office appointments and court hearings on time, and to cooperate with reasonable requests of the attorney.

5.    <u>Communication by Attorney.</u>  Attorney agrees to return all calls and emails within a reasonable amount of time, not to exceed 48 hours, and meet with client at the client's request as needed to keep the client informed about the status of his or her case. Attorney agrees to comply with reasonable requests for information. Attorney agrees to consult with Client about case strategy and client's objectives. Client's normally defer to the special knowledge and skill of their lawyer with respect to the means to be used to accomplish their objectives, particularly with respect to technical, legal and tactical matters. In a criminal case, the Client makes the decision, after consultation with Attorney, whether to accept a plea deal or go to trial, whether to have a jury trial or bench trial, and whether to testify at trial. All communications between Attorney and Client are confidential. Attorney cannot reveal information shared by Client unless Client gives consent, the Rules of Professional Conduct require disclosure, or the disclosure is impliedly authorized in order to defend client.

6.    <u>Non-Payment, Collection, Attorneys Fees, and Interest Charged.</u>  Any money owed to the Attorney must be paid by the date specifically set forth on the invoice. Client and Payor agree to pay a late charge of 1.5% per month on the balance of accounts more than 28 days past due. Client and Payor agree to pay a fee of $25.00 for each check his or her bank refuses to honor. Client is responsible for any credit card fees (3% charged by Apple Square). If there is a dispute regarding this Agreement, Client and/or Payor will pay the costs of collection and enforcement of this Agreement. If the Attorney deems it necessary to file an action against the Client and/or Payor to obtain any fee owed under this Agreement, Client and Payor also agree to pay the Attorney's attorney fees and costs. If Client disputes the accounting for earned fees prepared by attorney, Client may request resolution by mediation. Attorney will participate in mediation, but all costs and expenses, including attorney's fees for such mediation shall be paid by Client.

7.    <u>Discharge and Withdrawal.</u>  Client may discharge the Attorney at any time. The Attorney is, however, entitled to full payment for all legal fees and costs that have been earned or accrued up to the time of discharge. The Court makes decisions on whether Attorney will be allowed to withdraw from the case. The Client and Payor shall continue to pay legal fees and costs until the Court permits Attorney to withdraw. The Attorneys may withdraw with Client's consent, for good cause, or if the Rules of Professional Conduct allow withdrawal. Good cause includes a breach of this Agreement, Client's refusal to cooperate with Attorney or follow advice on material matters or any fact or circumstance that would render the Attorney's continuing representation unlawful or unethical. Attorney may withdraw if Client and/or Payor fail to pay advances, legal fees, or costs as required by this Agreement.

8.    <u>Disclaimer of Guarantee.</u>  Client acknowledges that the Attorney cannot and has not made any guarantees about the outcome of this matter. Any statements made by attorney regarding the merit or outcome of the case are professional opinions only and not a guarantee.

9.    Integration.    This Agreement represents the final and mutual understanding of the parties. It replaces and supersedes any prior agreements or understandings, whether written or oral. This Agreement may not be modified, amended, or replaced except by another written agreement.

10.    Document Retention Policy.    Client understands that Attorney will store appropriate portions of the file for seven (7) years following the resolution of the Client's matter at no charge to the Client. The Client may request the client's originals, or a copy of the file, and agrees to pay a reasonable copying charge so the Attorney may retain a complete file. The Client authorizes discard and destruction of the file materials after expiration of the seven-year period.

11.    Signing of the Agreement.    This agreement shall not take effect and Attorney has no obligation to provide legal services until a signed copy of this Agreement is received and timely payment of the flat fee deposit is paid in full. This is a fee agreement for representation by the Attorney and is a legally enforceable contract. Client has the right to seek independent legal counsel before executing this document or retaining the Attorney.

BY:    _____          Dated: 6/6/16
       Emily M. Gause, Attorney at Law

I have read and understand the foregoing terms and agree to them.

CLIENT:   _____          Dated: _____
          Rolando Daza-Cortez

PAYOR:    _____          Dated: 6/6/16
          Florinda Cortez

Page 4 of 4

**Ex-5**

 WASHINGTON STATE DEPARTMENT OF
**LICENSING**

### Vehicle Dealer Temporary Permit
### Temporary Vehicle Registration

Permit number **2082386A**

| Permit issue date | Permit expiration date | Special options |
|---|---|---|
| 10/02/2015 | 11/16/2015 | ☐ Reprint  ☐ Extension |

| Model year | Make | Series/Body type | Vehicle Identification Number (VIN) |
|---|---|---|---|
| 2008 | CADI | ESC4D | 1GYFK63828R208908 |

| Scale weight | Declared GWT |
|---|---|
| 5665 | |

**If dealer has not provided plates by the time this permit expires, notify the dealer first, to discuss the late title transfer, before contacting the Department of Licensing at Olympia (360) 664-6475 or Spokane (509) 482-3886**

### Registered owners

1st Registered owner name *(Last, First, Middle initial)*
Reyes, Florinda

2nd Registered owner name *(Last, First, Middle initial)*

3rd Registered owner name *(Last, First, Middle initial)*

4th Registered owner name *(Last, First, Middle initial)*

5th Registered owner name *(Last, First, Middle initial)*

Address
1631 Sanarita CT, Madera, CA 93638

### Dealer

| WA dealer number | Dealer name |
|---|---|
| 7716 | Sky's Auto Sales |

Anyone who knowingly makes a false statement may be guilty of a felony under state law and upon conviction shall be punished by a fine, imprisonment or both. I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

| Date and place | X Registered owner signature | Position, if signing for a business |
|---|---|---|
| Date and place | X Registered owner signature | Position, if signing for a business |

**This document is not proof of ownership.**

**This document must be carried in the vehicle until you receive your registration from the Department.**
**It must be presented to law enforcement upon demand.**
Failure to carry this document invalidates the Dealer Temporary Permit.



TD-420-015 (R/12/13)E Page 3 of 4    2164212

We are committed to providing equal access to our services.
If you need accommodation, please call (360) 902-3600 or TTY (360) 664-0116

**WASHINGTON**

Expiration

# Nov-16-15

Permit number

# 2082386A

**DEALER TEMPORARY VEHICLE PERMIT**



CERTIFIED MAIL

USA FOREVER

7019 0140 0000 4235 5766

<45237-086<>
Clerk U S District Court
Suite 2310
700 Stewart ST
Seattle, WA 98101
United States