UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROLANDO JESSE DAZA-CORTEZ,

                Defendant-Petitioner,

v.

UNITED STATES OF AMERICA,

                Plaintiff-Respondent.

NO.  C18-1608RAJ
    (CR15-269RAJ)

UNITED STATES' ANSWER TO
AMENDED PETITION FILED
UNDER 28 U.S.C. § 2255
 ("PETITIONER'S RESPONSE TO
GOVERNMENT'S RESPONSE")

Exhibit 7

Declaration of Prior Counsel Emily Gause

May 11, 2021

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Respondent,<br><br>v.<br><br>ROLAND JESSE DAZA-CORTEZ,<br><br>Defendant- Plaintiff. | No.   C18-1608RAJ<br>(CR15-269RAJ)<br><br>DECLARATION OF PRIOR COUNSEL EMILY M. GAUSE |

I, Emily M. Gause, do hereby declare:

1.  I was attorney of record for Roland Daza-Cortez from June 21, 2016 to July 24, 2017.

2.  I am in receipt of Mr. Daza-Cortez's briefing in support of 28 U.S.C. 2255 motion, and the Court's February 22, 2021 order granting an evidentiary hearing.

3.  The Court has asked the following questions:

    a.  Do I have in my possession any file notes regarding communications with Mr. Daza-Cortez regarding plea offers and expiration dates.

        i.  Answer – yes.

    b.  Do I have any additional evidence regarding my communications orally or in writing?

        i.  Answer – yes.

GAUSE LAW OFFICES, PLLC
130 ANDOVER PARK EAST, SUITE 300
TUKWILA, WASHINGTON  98188
(206) 660-8775 • FAX: (206) 260-7050

    c.  Do I have facts or evidence that can help answer the Court's inquiry into whether there is a reasonable probability that Mr. Daza-Cortez would have accepted the offer before any expiration date?

        i.  Answer – yes.

4. Attached to this declaration are several emails, handwritten notes, and typed notes from meetings with Mr. Daza-Cortez.  I have also consulted with my calendar to verify dates and times that I met with Mr. Daza-Cortez during the relevant time periods articulated in the Court's April 27, 2021 Order (Dkt. No. 26), January 1, 2017 to March 15, 2017.

5. Between January 1, 2017 and March 15, 2018, I met with Mr. Daza-Cortez no less than eleven times.  Our meetings occurred at the Federal Detention Center on:

- 1/4/2017 – one hour
- 1/11/2017 (with Lorraine Barrick) – two hours
  - ➤ *See **Exhibit 1, January 2017 invoice from Lorraine Barrick***
- 1/13/17 – ½ hour
- 1/20/17 – two hours
- 1/23/17 – two hours
- 1/24/17 – 1.5 hours
- 1/26/17 – two hours
- 2/6/17 – one hour
- 2/13/17 – one hour
- 2/19/17 – one hour
- 3/7/17 – one hour
- 3/9/17 – pretrial motion hearing (meetings before/after)
- 3/10/17 – pretrial motion hearing (meetings before/after)

6. During these meetings, most of which were one hour or more each, we discussed aspects of Mr. Daza-Cortez's case, discovery review, disputed facts, plea negotiations, preparation of pretrial motions, preparation of a forensic accounting report by expert Lorraine Barrick, investigation by his hired investigator Greg Walsh, and trial preparation.

DECLARATION OF PRIOR COUNSEL
EMILY M. GAUSE - 2

**GAUSE LAW OFFICES, PLLC**
130 ANDOVER PARK EAST, SUITE 300
TUKWILA, WASHINGTON  98188
(206) 660-8775 • FAX: (206) 260-7050

7. In addition to these in-person meetings, Mr. Daza-Cortez often called me from the FDC and we would have lengthy phone conversations.

**8.** On January 20, 2017, my handwritten notes from our meeting reflect clear instructions from Mr. Daza-Cortez about what he would be willing to accept in a plea offer.  He asked me to begin negotiation discussions with the Government.  He was clear he would not agree to plead to any counts involving gun possession, money laundering, or anything associated with the Scion car.  During this meeting, Mr. Daza-Cortez endorsed a 5-year mandatory minimum, with a government cap at 84 months (7 years). This offer was to accept responsibility for just the drugs, no guns, and limiting the forfeiture amount.  Mr. Daza-Cortez was clear about his parameters for what he would accept versus not accept in plea negotiations.  We discuss this at length. *See* **Exhibit 2, Meeting Notes.**

9. On January 23, 2017, I had a telephonic meeting with AUSA Sarah Vogel and Andy Colosurdo.  I articulated the endorsed offer from Mr. Daza-Cortez.  My notes from this phone call are attached as **Exhibit 3, Negotiation Meeting Notes.**

10. On January 24, 2017, my notes reflect discussion on investigation and pretrial motion preparation.  Mr. Daza-Cortez asked our investigator to conduct important investigation steps, such as calling certain witnesses and taking photographs.  During this meeting, I shared Lorraine Barrick's report with him and provided him a copy.  We discussed how to use Ms. Barrick's report to negotiate a return of his business, Avocado's Restaurant. During our discussions on this day, we reviewed the plea offer that Mr. Daza-Cortez endorsed, that I communicated to the Government yesterday.  This offer was to a custodial range of 5-7 years to accept responsibility for just the drugs, no guns, and limiting the forfeiture amount.  Mr. Daza-Cortez was clear about his parameters for what he would accept versus not accept in plea negotiations.  We discuss this at length.  *See* **Exhibit 4, Meeting Notes.**

11. On January 25, 2017, the Government offer a plea deal to a five-year mandatory minimum with a sentencing range of 7-9 years. *See* **Exhibit 5, Email Plea Offer from Government.**  The Government created a deadline of January 31, 2017, just six days after the communication of the offer.

DECLARATION OF PRIOR COUNSEL
EMILY M. GAUSE - 3

**GAUSE LAW OFFICES, PLLC**
130 Andover Park East, Suite 300
Tukwila, Washington 98188
(206) 660-8775 • Fax: (206) 260-7050

12. The next morning, I went to the FDC to share this plea offer with Mr. Daza-Cortez. I spent two hours with him reviewing the pros and cons of this deal.  During this conversation, we discussed the possible pretrial motions I could file. I told him that pretrial motions were tough to win in federal court.  I also explained that our best bargaining power would be before pretrial motions were litigated and how moving to a motion hearing could result in worse plea offers from the government later.  I explained that the government was in charge with whatever plea offer it chose to give, and that the offers could get better or worse with negotiation. I provided Mr. Daza-Cortez a copy of the Government's email which carefully laid out the terms and reasons.  Mr. Daza-Cortez was not satisfied with the terms, and remained firm on his position from prior meeting that he would not accept responsibility for any money laundering counts, the Toyota Scion, or forfeiture of the Escalade car.  He did make several concessions on some of the financial aspects of the resolution, but he would not agree to a 7-9 year sentencing range.  I could not find notes from this meeting.

13. That evening (1/26/17), I summarized Mr. Daza-Cortez's position to the Government in a lengthy email.  I told them I would make myself available for a plea hearing before January 31, 2017, but that I would also be prepared to ask for a short extension of the pretrial motions deadline to allow us more time to negotiate. **Ex. 5.**  While my schedule was open between January 26 and 31 for a plea hearing, I had pre-scheduled plans (with pre-paid flights) to watch my brother graduate from Air Force Basic Training on February 1, 2017.

**14.** The next day, (1/27/17 – a Friday), the Government responded and refused to make additional concessions.  It kept the custodial range at 7-9 years.  **Exhibit 6.**

15. On Monday 1/30/17, I spoke with Mr. Daza-Cortez by phone.  I shared the revised offer with him.  I remember reading the email word for word to him.   Mr. Daza-Cortez was willing to make financial concessions but continued to believe that 7-8.5 years was too high of a sentence.  He also felt very pressured given the time constraints.  The initial offer occurred 5 days prior and he was feeling stressed to make big decisions without the benefit of speaking to his family.  He also wanted me to share the details of the plea offers with his family members.  I agreed to do

DECLARATION OF PRIOR COUNSEL
EMILY M. GAUSE - 4

**GAUSE LAW OFFICES, PLLC**
130 ANDOVER PARK EAST, SUITE 300
TUKWILA, WASHINGTON  98188
(206) 660-8775 • FAX: (206) 260-7050

so.  Mr. Daza-Cortez instructed me to offer addition financial concessions but only if the Government reduced the custodial time.  I continued to repeat his position and advocate for him in these plea negotiation emails.  **Exhibit 7.**

16. The next day, (1/31/17), the Government changed the plea offer slightly.  It kept many provisions the same but amended the custodial time from 7-9 years to 7-8.5 years.  It agreed that if Mr. Daza-Cortez would accept the terms of the plea deal by February 1, 2017, he could enter the plea by February 6, 2017, to accommodate my travel schedule.  **Exhibit 8.**

17. On January 31, 2017, I spoke with Mr. Daza-Cortez on the phone.  I explained the new change in the plea deal.  I read – word for word – the new email from the Government.  Mr. Daza-Cortez was quite upset with the Government's tone, specifically the sentence that read "we will not make a single additional change to the plea agreement; do not ask or the offer is off the table."  **Ex. 8.**  He said this was unfair, and was angry given the many issues he still had with certain provisions of the agreement. I also shared the Government's agreement to allow him to enter a plea on Monday, January 6, but that he must give me an answer accepting by February 1, 2017.  I encouraged Mr. Daza-Cortez to take the deal.  I told him I was worried this was the best deal he would get, and he should not reject it.  Mr. Daza-Cortez was upset that he must make a decision before consulting with his family.  I warned him that the Government could take away the offer if we do not accept it.  He would not provide me with a decision on accepting or rejecting the offer until he could speak with his family.

18. Also on January 31, 2017, I emailed with Mr. Daza-Cortez's family and arranged for a phone call with them on February 1, 2017.

19. On February 1, 2017, I spoke with Mr. Daza-Cortez by phone again and encouraged him to accept the plea deal.  He continued to express anxiety and frustration over the rushed time frame and asked me to request additional time.

20. On February 1, 2017, I sent an email to the Government explaining my client's position.  I asked to be able to review the new plea agreement and terms in person with Mr. Daza-Cortez on February 6, 2017 when I returned, prior to giving an answer to their offer.  I also asked for the time so he could consult with his family.

DECLARATION OF PRIOR COUNSEL
EMILY M. GAUSE - 5

**GAUSE LAW OFFICES, PLLC**
130 ANDOVER PARK EAST, SUITE 300
TUKWILA, WASHINGTON  98188
(206) 660-8775 • FAX: (206) 260-7050

I never received an email back from either AUSA affirming my request or denying it. I assumed that this meant the "firm deadline" of February 1, 2017 was extended until 1:00 on Monday February 6, 2017 as I proposed. **Exhibit 9.**

21. I spoke with Mr. Daza-Cortez's sister and niece on February 1 and again on February 2, 2017. I told them that my advice was that Mr. Daza-Cortez accept the plea offer. I shared the exposure that Mr. Daza-Cortez if he went to trial and lost (15-year mandatory minimum and a very high sentencing range in excess of 300 months). I offered to send them an email summarizing the offer and options. I did so on February 3, 2017. **Exhibit 10.** I explained that I would see Mr. Daza-Cortez on the morning o February 6, and that he would have to make a firm decision one way or another that morning. The family was aware that the plea offer was set to expire on February 1, 2017 but that I had asked to have until February 6, 2017 so that my client could talk to his family. I encouraged his family to help him come to a clear decision. I repeated several times that my advice was that he take the plea offer.

22. On Monday, February 6, I met with Mr. Daza-Cortez at the FDC for about 45 minutes. I presented him with printed copies the latest plea negotiation emails. We walked through the terms of the deal. I explained the options and I urged him to accept the deal. I repeated that the deadline to accept the plea offer was February 1, 2017 and had expired, but that I had asked for additional time as Mr. Daza-Cortez instructed. I explained that I told the AUSA I would give her a firm answer by 1:00 PM today. This is captured in handwritten notes from this meeting, attached as **Exhibit 11.** I told Mr. Daza-Cortez that the Government was firm and that they had explained this was their very "best deal" to him. Mr. Daza-Cortez knew that pretrial motions were to be filed that evening and focused much attention on what issues we would raise if we rejected the offer and litigated motions. He reiterated his firm line for what he would plead to. At the end of this meeting, Mr. Daza-Cortez made his decision to reject the offer and move forward to pretrial motions. He also wanted to discuss evidentiary issues and facts related to the pretrial motions. He gave me instructions for our investigator to contact certain witnesses.

DECLARATION OF PRIOR COUNSEL
EMILY M. GAUSE - 6

I also shared with him new discovery we received that was related to our pretrial motions.

23. Whenever I met with Mr. Daza-Cortez to discuss any plea offers, I would always print copies of the communications with the Government and share a copy with him to read as we discussed. Within those emails is explicit language about the terms and deadlines. During our meetings, we almost always went over every line together. This is my practice with all clients. (Note: Daza-Cortez admits he read the plea offer during this meeting, and that I "explained a little bit of those things.") *See* Dkt. No. 5-2, pg. 31.

24. During our February 6, 2017 meeting where Mr. Daza-Cortez chose to reject the offer, I was rushing out to be able to communicate with the AUSA as I promised by 1:00 PM. He remembered this and spoke about it during his sentencing hearing. Dkt. No. 5-2, pg. 31.

25. On February 6, 2017, following my client's wishes, I rejected the Government's offer. **Exhibit 12.**

26. In the weeks leading up to February 6, 2017, I prepared nine pretrial motions and filed them later that evening.

27. The following week, on February 13, 2017, I met with Mr. Daza-Cortez again. Our entire meeting was focused on evidence and preparation for pretrial motions. He did not mention the prior plea offer or indicate any desire to take a plea deal. *See* **Exhibit 13, Handwritten Notes.**

**28.** On February 19, 2017, we discussed financial issues related to the money laundering charges, including information in Lorraine Barrick's report. We also discussed providing additional discovery. Mr. Daza-Cortez did not bring up any desire to continue engaging in negotiations. *See* **Exhibit 14, Handwritten Notes.**

29. Also on February 19, 2017, I provided the family with an update about the case including that Mr. Daza-Cortez chose not to accept the 7-8.5 year offer from the Government. I updated about the motions filed and pretrial motion hearing scheduled. *See* **Exhibit 15.**

30. I met with Mr. Daza-Cortez on March 7, 2017. My notes from this meeting are attached as **Exhibit 16.** I brought copies of all of the motions, responses, and

**GAUSE LAW OFFICES, PLLC**
130 ANDOVER PARK EAST, SUITE 300
TUKWILA, WASHINGTON 98188
(206) 660-8775 • FAX: (206) 260-7050

replies.   During this meeting, he asked me to talk to the Government about negotiations again. We were just days before his pretrial motion hearing. He asked if we could get the prior offer of 7-8.5 years back on the table.  I told him that was unlikely given that he rejected the last offer.  I discussed with him the need to come up from his last position of a firm 5-7 years.  He endorsed an agreed 7-year offer. I shared that with the Government.  They rejected the offer.  *See* **Exhibit 17**.   Then, they refused to discuss any additional plea offers until after the motion hearing.

31. After the motion hearing was complete on March 10, 2017 (a Friday), and the Court denied all of our motions, the AUSAs communicated an offer of an agreed ten years, but they wanted Mr. Daza-Cortez to accept the offer that same day.  I again shared these terms and the deadline with Mr. Daza-Cortez.  He again balked at the rush and refused to make big decisions about a guilty plea with only a few hours to consider it.  He asked to be able to speak with his family before agreeing.  I again told him that was risky and that the Government made it clear they would increase the sentence if he did not accept by today.  **Exhibit 18**.  Mr. Daza-Cortez refused to accept or reject this plea offer and instead said he would have an answer for me on Monday.

32. I sent an email to Mr. Daza-Cortez's family about this and urged them to help him make a decision quickly.  **Exhibit 19.**

33. On Monday, March 13, 2017 early in the morning, I finally heard from Mr. Daza-Cortez and he gave me permission to accept the plea offer.  I communicated this to AUSA Sarah Vogel.  However, given the deadline to plea on Friday, March 10, the plea terms changed.  **Exhibit 20, Emails on Plea Offer.**  I was not able to review the new plea terms with my client until I arrived at the Seattle Courthouse around 1:45 PM before a 2:30 PM schedule plea hearing.  It was quite stressful and Mr. Daza-Cortez felt pressured.  He also felt afraid to reject the plea given the history of this case, and the deals continuing to get worse.  He was apprehensive and upset to accept the plea offer, but none-the-less wanted to do so.  I reviewed the entire plea agreement with him again in person and ensured he understood all paragraphs. We entered the plea that afternoon.

DECLARATION OF PRIOR COUNSEL
EMILY M. GAUSE - 8

**GAUSE LAW OFFICES, PLLC**
130 Andover Park East, Suite 300
Tukwila, Washington  98188
(206) 660-8775 • Fax: (206) 260-7050

34. I updated the family on the guilty plea and expressed my feelings about disappointment he did not take the 7-8.5 year offer.  **Exhibit 21.**

35. After the plea hearing and before the sentencing hearing, Mr. Daza-Cortez started to treat me poorly.  He accused me of doing a poor job at the pretrial hearing and blamed me for losing the motions.  On April 18, 2017, after a particularly difficult meeting with him, I dictated a summary of the meeting into an email to myself to have a record of what happened and when.  A copy of that email is attached as **Exhibit 22.**  (Note: there are grammatical errors due to voice dictation).

36. After this meeting, Mr. Daza-Cortez apologized and asked me to remain as counsel for him through sentencing.  I agreed to remain his attorney until he could obtain new counsel.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE.

SIGNED on this 11th day of May, 2021 in SEATTLE, WA.

EMILY M. GAUSE, WSBA #44446
130 Andover Park East, Suite 300
Tukwila, WA 98188
206-660-8775
emily@emilygauselaw.com

DECLARATION OF PRIOR COUNSEL
EMILY M. GAUSE - 9

**GAUSE LAW OFFICES, PLLC**
130 ANDOVER PARK EAST, SUITE 300
TUKWILA, WASHINGTON  98188
(206) 660-8775 • FAX: (206) 260-7050